UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| KATHY PEAK, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-11-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TRU-CHECK, INC., | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kathy Peak filed suit against Tru-Check in Shelby Circuit Court on February 6, 2013. [R. 1-1.] In 2008, Peak was employed as a meter reader on a contract held by Tru-Check. [Id. at 3.] During that year, she was injured in an accident, unrelated to her employment, and granted leave pursuant to the Family and Medical Leave Act (FMLA). [Id.] Peak alleges she was terminated with five weeks of Family and Medical Leave remaining but, after protesting, was offered a position an hour and forty-five minutes away from her previous job site. [Id. at 4.] Now, almost five years later, Peak alleges that Tru-Check's actions support charges of wrongful discharge, defamation and outrage. [Id. at 5.]

Tru-Check removed this action to the Federal Court for the Western District of Kentucky on March 1, 2013 [R. 1.] and, by stipulation, this matter was transferred to the Eastern District on March 12. [R. 7.] On the day the Eastern District received this case, Tru-Check filed the instant motion for judgment on the pleadings. [R. 10.] Peak has not responded to this motion or, for that matter, taken any action in this case since it was received by this Court.

# I

The Defendants seek a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P.12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Tp. of Comstock*, 592 F. 3d 718, 722 (6th Cir. 2010) (citing *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted).

Well-pleaded complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[D]etailed factual allegations" are unnecessary but the rule " 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As is the case with a motion to dismiss under Rule 12(b)(6), in a Rule 12(c) motion for judgment on the pleadings, the Court is required to "accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citing *Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 451 (6th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 570); *see also Courie v. Alcoa Wheel & Forged Products*, 577

F.3d 625, 629 (6th Cir. 2009). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). *Plausible,* however, is not to be confused with *possible*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" and more than facts that are " 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 557). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In execution, the Supreme Court recommends a two-prong approach in determining if dismissal is appropriate. First, the Court must separate factual allegations from legal conclusions as the Court is only under an obligation to accept factual allegations as true. Next, the Court must evaluate the "well-pleaded factual allegations," "assum[ing] their veracity," and ultimately "determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. If they do not, dismissal is appropriate.

## II

### A

Plaintiff states in her complaint that she was "granted Family and Medical Leave as defined by State and Federal Statute." [R. 1-1 at 4.] She alleges that Tru-Check notified her five weeks prior to the expiration of her FMLA leave that she was terminated from employment. [Id.] After protest, Tru-Check offered her employment at an alternative location not close to her home. Peak alleges these behaviors constitute wrongful discharge. As explained below, Peak is time barred from litigating these allegations.

3

The Federal Statute to which Peak refers is the Family and Medical Leave Act, codified at 29 U.S.C.A. 2617. That act provides that "an action may be brought under this section not later than two years after the date of the last event constituting the alleged violation." 29 U.S.C.A. (c) 1. The only exception to this limitation is in the case of a "willful violation" where the Plaintiff has three years to file such a suit. 29 U.S.C.A. (c) 2. The action shall be deemed "commenced" on the date the action is filed. 29 U.S.C.A. (c) 3.

The allegedly illegal discharge took place in 2008. [R. 1-1.] The complaint makes no mention of any illegal behavior beyond 2008.[1] The Complaint suggests the violation occurred in Spring 2008 but, even if the alleged violation occurred on the last day of 2008, Peak would still have a maximum of three years (assuming a "willful violation") to file this action. That date would be the December 31, 2011. The Complaint was filed on February 6, 2013. [Id.] Peak's complaint is untimely under both the two and three-year limitations period listed above. Her FMLA action cannot survive.

While the Court is doubtful that Peak seeks to plead wrongful discharge under Kentucky law, to the extent that she wishes to do so, her allegation is similarly dismissed. Employment in Kentucky is "at-will." It has been said that "an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Bishop v. Manpower, Inc. of Cent. Kentucky*, 211 S.W.3d 71 (2006) (quoting *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)).

A very narrow exception to the "at-will" doctrine provides that plaintiffs may sue for a discharge in violation of Kentucky public policy. This protection was first recognized in

---

[1] Peak does state that she has been injured by a "period of unemployment lasting almost 14 months." [R. 1-1.] The complaint, however, pleads no facts alleging any violation during this time period.

4

*Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983), where the Kentucky Supreme Court recognized an exception to the at-will doctrine for employees discharged for "asserting… statutory right[s] to medical treatment and compensation" via workers compensation claims. *Firestone,* 666 S.W.2d at 734. Wrongful discharge is only available as a cause of action where it " 'is contrary to a fundamental and well-defined public policy as evidenced by existing law' " and that public policy is " 'evidenced by a constitutional or statutory provision.' " *Firestone,* 666 S.W.2d at 731 (quoting *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 835 (Wis. 1983)). The question of "whether the reason for discharge is unlawful because of a constitutionally protected right or a right implicit in statute" is a question of law for the Court. *Firestone*, 666 S.W.2d at 733.

To the extent that Peak intended to plead wrongful discharge under Kentucky law, her complaint has a multitude of problems. First, Peak has cited no Kentucky Statute to support a claim of public policy wrongful discharge. Second, Peak may not cite the FMLA as a basis for a Kentucky wrongful discharge claim under the public policy exception. Kentucky's wrongful discharge doctrine "extends a right of action only for the violation of a Kentucky statute or a constitutional provision." *Shrout v. The TFE Grp.*, 161 S.W.3d 351, 355 (Ky. Ct. App. 2005) (citing *Alderman v. Bradley,* 957 S.W.2d 264 (Ky.App.1997)); *see also Clark v. Sanofi-Synthelabo, Inc.*, 489 F. Supp. 2d 759, 771 (W.D. Ky. 2007). As mentioned above, Peak has identified no State law that provides a similar protection to that of the FMLA. Third, even if Peak were permitted to cite a Federal Statute as grounds for applying the public policy exception under Kentucky Law, her claim still fails because the wrongful discharge doctrine is inapplicable where the statute also provides a remedy. "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the

remedy provided by the statute." *Id.* at 401. The FMLA provides a remedy. Just because the Plaintiff is outside the statute of limitations to recover on the FMLA, does not mean that Kentucky's cause of action for wrongful discharge becomes available. *See Franklin v. Greenheck Fan Corp.*, 2005 WL 1657047 (E.D. Ky. July 8, 2005) ("When a statute provides a structure for pursuing claims for termination, that statutory structure preempts a private wrongful discharge claim.") Finally, it is questionable whether Peak has pled enough facts to state a claim for relief. For example, it is unclear whether Peak was even discharged as she was offered a job in a different location. It also fails to provide when exactly this happened—a pertinent fact as she is potentially approaching the end of the five-year statute of limitations for wrongful discharge.[2] *Iqbal* requires that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 570). Ultimately, the Court need not determine if the complaint would satisfy *Iqbal* as it fails on other grounds. For all the aforementioned reasons, to the extent Peek seeks to levy a state claim of wrongful discharge, it is dismissed.

**B**

An action alleging defamation, also referred to as libel or slander must "be commenced within one (1) year after the cause of action accrued." KRS § 413.140. The cause of action accrues when the allegedly slanderous or defamatory statement is published or made. *See Caslin v. Gen. Elec. Co.,* 608 S.W.2d 69, 70 (Ky. Ct. App. 1980) ( "[I]t is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations provided by KRS 413.140(1)(d).") Peak's complaint is thin on

---

[2] "[T]he five-year statute of limitations set out in KRS 413.120 applies to the tort of wrongful discharge." *Bednarek v. United Food & Commercial Workers Int'l Union, Local Union 227*, 780 S.W.2d 630, 632 (Ky. App. 1989); (citing *Brown v. Physicians Mutual Insurance Co.,* S.W.2d 836 (Ky. App. 1984), *overruled on other grounds*).

6

details, alleging that Tru-Check's actions constitute "a breach of Kentucky's Law with regard to defamation." [R. 1-1 at 5.] It must be assumed that any alleged defamatory action arose from the same circumstances as the wrongful discharge. As explained, *supra A*, the wrongful discharge claim was not filed within the three-year statute of limitations. By the same logic, it is clear that any defamation action, which must be filed within one year of the incident, must also be dismissed.

## C

Peak's outrage allegation fails for two distinct reasons. First, it is untimely. Second, Peak has not sufficiently plead outrage even if it were timely filed. The tort of outrage, also known as the intentional infliction of emotional distress, is governed by either a one or a five year statute of limitations, depending on what other torts might also be appropriately alleged. The Kentucky Court of Appeals has explained.

> The tort of outrage is intended as a "gap-filler", proving [*sic*] redress for extreme emotional distress where traditional common law actions do not. Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action.

*Bennett v. Malcomb*, 320 S.W.3d 136, 137 (Ky. Ct. App. 2010) (quoting *Banks v. Fritsch,* 39 S.W.3d 474, 481 (Ky. App. 2001)). In this case, defamation is a traditional tort that provides for the recovery of emotional distress. Peak's tardiness in filing the defamation action within the statute of limitations also dooms her outrage allegation.

Even if Plaintiff filed within the statute of limitations, she still did not sufficiently plead the tort of outrage. In *Craft v. Rice*, the Supreme Court adopted the approach of the Restatement Second of Torts: "(1) One who by extreme and outrageous conduct intentionally or recklessly

causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." 671 S.W.2d 247, 251 (Ky. 1984). In a later decision, the Supreme Court summarized what is necessary to prove a prima facie case of outrage:

> 1) the wrongdoer's conduct must be intentional or reckless;
> 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> 4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.,* 151 S.W.3d 781, 788 (Ky. 2004) (citations omitted). "The mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. Ct. App. 2007) (quoting *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005)); see also *Sacharnoski v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002) (not outrageous behavior within meaning of the tort where employee was forced to falsify employment records and then was terminated for performing that action.) Nothing beyond mere termination was alleged in the complaint. This charge, too, must be dismissed.

## III

Accordingly, it is hereby **ORDERED** as follows:

1. All claims of the Plaintiffs against Defendants in the matter are **DISMISSED**;

2. Any pending motions are **DENIED**, as moot; and

3. This matter is **STRICKEN** from the active docket.


This 22nd day of January, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge